JACKSON v. LEWIS.

1.  In action to set aside a deed as fraudulent because voluntary, it may be shown by parol testimony, if it be otherwise competent, that the deed was based upon a valuable consideration, although on its face purely voluntary ; but this may not be shown by loose declarations of the grantor.

2.  The grantee claimed that the real consideration of the deed was a legacy received by his mother, the grantor, for him.   To establish this, it was necessary for the grantee to show clearly that his mother had received this legacy, and that he had released her from her indebtedness to him therefor in consideration of the conveyance.

3.  An attorney should not be permitted to testify as to his recollection of payments made by him for an executor on account of a legacy, until proof of loss of receipts which were taken for such payments.   But such testimony is not incompetent on the ground of privileged communication.

4.  Where an executor makes an absolute deed, prepared by his attorney, to a mother alone, for a lot of land, it will require strong evidence to show that the deed was intended for both mother and son in payment of a legacy to them.

Before NORTON, J., Richland, May, 1887.

This was an action by C. F. Jackson and Thomas Agnew, executors of John Agnew, deceased, against N. E. Lewis, to set

aside a deed made to the defendant by his mother, a judgment debtor of the plaintiffs. This action was instituted in February, 1886. The Circuit decree, omitting its statement, was as follows:

The defendant, N. E. Lewis, denies all fraud, and alleges that the consideration expressed in the deed was a mistake, and that the true consideration for said deed was the sum of twenty-five hundred dollars, a legacy which his father, R. N. Lewis, had bequeathed him, and which was paid over to his mother in trust for him.

The only question for the court to determine is, was this deed of Emily Cooper to her son voluntary? A voluntary deed is void as to existing creditors, whether from a parent to her child or to another. The consideration expressed in the deed of Emily Cooper to N. E. Lewis, outside of love and affection, is so inadequate that it must be considered voluntary, if the evidence as to other and further valuable consideration be excluded. But evidence to show that there was an additional consideration is admissible: 1 *Greenl. Evid.* (9th edit.), § 304; *Bank* v. *Brown*, Riley Eq. Cas., 131; *Fraser* v. *Davie*, 11 S. C., 56; *McCrea* v. *Purmort*, 16 Wend., 460.

The evidence, then, being admissible, it is proved by the testimony introduced that Emily Bateman was the mistress of R. N. Lewis during a number of years previous to his death, and that he bequeathed a legacy of five thousand dollars to Emily Bateman and her child, N. E. Lewis; said legacy to be paid Emily on her proper receipt, without any security for the portion of her said child, It was proved that Emily had no property besides her share in the legacy and a life interest in a small house, all of which she received from said Lewis. It appears further that Emily Cooper purchased the lot in dispute from Daniel B. Lewis, executor of R. N. Lewis, with $2,650 of the legacy left her and her son. It does not appear that she ever paid her son any part of his legacy in any other manner. Although she took the title at first in her own name, very soon thereafter, according to the testimony of Israel Smith, to whom she gave the note, the basis of this action, she refused to mortgage this very lot on the grounds that it belonged to her son, Nicholas Eugene, and was not her property.

I have, therefore, no hesitation in finding as matter of fact that there was an adequate valuable consideration for the said deed of Emily Cooper to N. E. Lewis, in addition to the good consideration therein expressed. Moreover, if that consideration was her antecedent indebtedness to her son, it would still be good against the claim of the plaintiff; for the defendant, N. E. Lewis, by such conveyance made by Emily Cooper, acquired payment prior to plaintiffs' *judgment.* It is clear to my mind from the testimony adduced that the plaintiffs have failed to implicate Emily Cooper in any fraud against her creditors at the time of making the deed, and, of course, the infant was not involved. The transaction appears to me to be entirely honest and free from all suspicions.

It is adjudged and decreed, that the complaint be dismissed, and that the clerk of this court do tax up the costs of the action, and that the defendant, Nicholas Eugene Lewis, have leave to issue execution against the plaintiffs as executors for his costs, to be levied of the estate of their testator, and that the defendant, Robert Cooper, pay his own costs.

From this decree, plaintiffs appealed, alleging error to the Circuit Judge in receiving parol evidence to add to and contradict the deeds in question, and in permitting oral proof of Emily Cooper's declarations; in finding that Emily Cooper purchased the lot in question with the legacy left to her and to her son; that the deed to defendant was based upon a valuable consideration and not fraudulent; and in permitting Col. McMaster to testify as to privileged communications and as to transactions evidenced by written papers not shown to have been lost.

*Messrs. Bachman & Youmans,* for appellants.

*Mr. F. W. McMaster,* contra.

September 12, 1888. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The object of this action was to set aside an alleged voluntary deed from Emily Cooper (formerly Bateman) to Nicholas Eugene Lewis, for a lot of land on Wash-

ington street, in the city of Columbia, and to subject the same to the payment of the debts of said Emily. It appears from the testimony that the lot in question originally belonged to one R. N. Lewis, and that after his death, his executor, in pursuance of a power conferred in his will, on April 14, 1870, duly conveyed said lot to the defendant, Emily Cooper, by her maiden name of Emily Bateman (she having subsequently intermarried with the defendant, Robert Cooper), the consideration stated in the deed as having been paid by the said Emily to the executor being the sum of twenty-six hundred and fifty dollars. On the same day the executor undertook to convey another lot in the city of Columbia, understood to be on Lincoln street, to the said Emily "for herself, and in trust for her son," Nicholas Eugene Lewis, during their joint lives, and at the death of either, then to the survivor absolutely in fee simple. This last mentioned conveyance is recited as made in pursuance of a devise in the will of R. N. Lewis, whereby he gave "to Emily Bateman, colored person, and her child, Nicholas Eugene Lewis," the said lot "to be the joint and common property of the said Emily Bateman and her said child, Nicholas Eugene Lewis, during their joint lives, and at the death of either to be the property of the survivor of them absolutely in fee simple." By the third clause of his will the testator also gave "to the said Emily Bateman and her child, Nicholas Eugene Lewis, five thousand dollars in cash, to be paid to the said Emily Bateman by my executors, upon her proper receipt, without any security for the portion of her said child, as soon after my death as practicable."

Emily Bateman having contracted a debt to one Israel Smith, on January 18, 1873, executed her note under seal, whereby she promised to pay, five years after that date, to the order of Israel Smith, five hundred dollars, with interest payable annually from December 31, 1872. This note having been duly transferred to the plaintiffs' testator, John Agnew, he brought suit on it against the said Emily, who had in the meantime intermarried with the defendant, Robert Cooper, and recovered judgment against her, which was duly entered on June 5, 1878, and the execution to enforce the same has been returned *nulla bona.* On February 16, 1876, the said Emily Cooper, "for and in consideration of the

love and affection I bear towards my son, Nicholas Eugene Lewis, and in consideration of the sum of ten dollars to me in hand paid by the said Nicholas Eugene Lewis," conveyed the lot in con-- troversy to the said Nicholas Eugene Lewis, reserving to herself, however, the rents and profits of the same "until the said Nicho- las Eugene Lewis arrives at the full age of twenty-one (21) years, for his maintenance, education, and support." Emily Cooper died intestate in November, 1883, and her son, Nicholas Eugene Lewis, who had attained his majority in May, 1883, administered on her estate.

The testimony was all taken by the master and reported to the court without any findings of fact, and the case was heard by the Circuit Judge upon the testimony so reported. The point of controversy was whether the deed from Emily Cooper to Nicho- las Eugene Lewis for the lot in question, though on its face ap- pearing to be voluntary, could be shown by parol evidence to have been in fact based upon valuable consideration, and whether the evidence adduced for that purpose was sufficient to establish that fact. The Circuit Judge held the affirmative of both of these propositions, and therefore rendered judgment dismissing the complaint. From this judgment plaintiffs appeal upon the several grounds set out in the record.

That a deed, which on its face appears to be voluntary, may in a case like this be shown, by parol evidence, to have been in fact based upon a valuable consideration, is, we think, established by the authorities cited by the Circuit Judge, to which may be added the case of *Featherston* v. *Dagnell, ante,* 45, recently decided by this court. But such parol evidence must be otherwise com- petent; and the material inquiry in this case is, whether the parol evidence relied upon to establish the fact that the real con- sideration was a valuable one, was otherwise competent.

Except the testimony of Col. McMaster, the only evidence adduced to show the real consideration of the deed, was derived from certain loose declarations of the grantor to the effect that though the lot mentioned in the deed was conveyed to her abso- lutely, yet it was really intended for the benefit of her son, and that it was in fact his, and the real question is whether such declarations were competent. Although these declarations when

offered were in every instance objected to and the exception duly noted, and reported with the testimony, we do not find that the Circuit Judge made any distinct ruling as to the competency of such testimony; but as it is manifest from the whole tenor of his decree that he regarded the testimony competent and based his conclusion upon it, we must assume that he overruled all the exceptions to the testimony, not only as to the declarations of Emily Cooper, but as to the testimony of Col. McMaster, which was likewise duly excepted to, for there was no other testimony in the case to sustain his conclusion.

We will first consider whether the declarations of Emily Cooper, under whom the respondent claims, were competent to show that the deed to her son, though nominally voluntary, was in fact based upon a valuable consideration. It will be observed that at the time the debt which constitutes the foundation of the plaintiffs' action was contracted, Emily Cooper was in possession of the lot in question under an absolute conveyance, wherein a valuable consideration was stated, which conveyance was spread upon the records. It is but reasonable to suppose that she obtained credit upon the faith of that property, to which the public had a right to assume she had an absolute title; and the testimony of Israel Smith, the assignor of the testator of plaintiffs, would seem to indicate that he had extended credit to her for this same debt upon the faith of that property, for his application to Emily Cooper to secure that debt by a mortgage of this lot shows that he looked to that property as a source from whence he might expect to obtain payment of such debt. This being the case, it seems to us that it would open the door to fraud to allow her grantee under a deed, voluntary upon its face, and so spread upon the records, to withdraw that property from liability for her debts simply by proof of her parol declarations that such voluntary deed was in fact based upon a valuable consideration, and hence we do not think such declarations were competent for that purpose.

While it may be true, in a case like this, that it is permissible to show by parol evidence, otherwise competent, that a deed, voluntary upon its face, was in fact based upon a valuable consideration, yet we do not think that this can be shown merely by

the loose declarations of the person under whom the grantee claims, for such a doctrine would place the claims of creditors entirely at the mercy of their debtors. To sustain the conclusion reached by the Circuit Judge, it seems to us, that it was necessary for the respondent to show, 1st. That his half of the legacy under the third clause of the will of Lewis had been paid to his mother, whereby she became indebted to him in that amount. 2nd. That in consideration of his releasing her from such indebtedness, the deed in question was executed. We do not think that either of these facts were shown by any competent evidence, so clearly and distinctly as to warrant a court in concluding that a deed, upon its face voluntary, was in fact based upon a valuable consideration.

The testimony of Col. McMaster was relied upon to show that the whole amount of the legacy was paid over to Emily Cooper; but in addition to the fact that it was objected to as secondary (the receipts being the best evidence), it is somewhat indefinite, and does not show clearly and distinctly that the whole amount of the legacy—five thousand dollars—was paid over to Emily Cooper. This witness said: "I paid Emily Bateman a very large portion of this legacy of $5,000, and took her receipts for the same. At one time I took her receipt for $2,650, and sundry other receipts for smaller amounts." Again he said: "I think I paid Emily Bateman about $4,000 of that legacy." The objection to this testimony should have been sustained, inasmuch as the proper foundation for the introduction of the secondary evidence was not laid. The receipts themselves were certainly the best evidence, and would have shown definitely what the parol evidence does not show, the amounts paid to Emily. These receipts, the witness said, had been turned over by him to D. B. Lewis, the executor of R. N. Lewis, and there is no evidence of any search made for them, either amongst the papers of said executor or amongst the papers of Boone, who became the attorney of the estate subsequently. This is sufficient to exclude so much of Col. McMaster's testimony as is material to the inquiry, without considering the other ground of objection—"because it is a confidential privileged communication between client and attorney"—though we may add that we see nothing in that objection.

As to the second point, it will be observed that there is a singular absence of any evidence, even if the declarations of Emily Cooper could be regarded as competent, that the deed in question was made in satisfaction of any indebtedness from Emily to her son. On the contrary, her declarations tend to show that though the deed was made to her absolutely, yet it was in fact made to her for her son, and regarding the lot as really his, she made the deed of gift to him. This, so far from proving the point to be established, negatives the idea that the real consideration of the deed was any indebtedness from her to her son; and certainly there is not the slightest evidence tending to show that, when the deed from Emily Cooper to her son was executed, any release of such indebtedness (if any there was) was executed. On the other hand, if the declarations of Emily Cooper be regarded as tending to show that the deed from the executor of Lewis to her for the Washington street lot was really for the benefit of her son, though made to her absolutely, it is difficult to conceive of any reason why such an intention was not incorporated in the deed. It was drawn by Col. McMaster, who, no doubt, was fully cognizant of all the circumstances, and he says nothing of the kind in his testimony. It is not easy to believe that a lawyer of his high character, intelligence, and long experience would draw a deed in terms so totally at variance with the intention of the parties.

It seems to us that it would be very unsafe to allow a deed voluntary upon its face to be converted into a deed based upon a valuable consideration, by such loose and indefinite testimony as was adduced in this case.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.